UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

PATSY COLLINS,                    )
                                  )
          Plaintiff,              )
                                  )
     v.                           ) Case No: 3:04-1031
                                  ) Judge Echols
SUNTRUST, INC.,                   )
SUNTRUST BANK, and/or             )
SUN TRUST BANKS, INC.,            )
                                  )
          Defendant.              )

## MEMORANDUM

Pending before the Court is Defendant SunTrust Banks, Inc.'s Motion for Summary Judgment (Docket Entry No. 21), to which Plaintiff Patsy Collins (Docket Entry No. 26) has responded in opposition, and Defendant has replied (Docket Entry No. 28).

## I.  FACTUAL BACKGROUND

This is an employment discrimination action brought under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. 623 *et seq.*), and the Tennessee Human Rights Act ("THRA"), T.C.A. § 4 -21-401 *et seq.*  Plaintiff Patsy Collins ("Collins") alleges she was improperly discharged from her position as a loan review officer for Defendant SunTrust Banks, Inc. ("SunTrust") and wrongfully denied subsequent employment with SunTrust because of her age. Defendant asserts that Plaintiff's employment ended as a result of a legitimate reduction in force and that she was not qualified for the subsequent position that she sought.  The facts underlying the present dispute are as follows.

1

SunTrust is a banking and financial services organization that operates primarily in the southeastern United States. Its operations are organized geographically into regions, and its Central Region includes Georgia and Tennessee. (Def. SOF ¶¶ 1 & 2).[1]

One of the departments supporting SunTrust's lending operations in the Central Region is the Credit Review Department. The Credit Review Department is responsible for conducting independent reviews of existing loans and loan portfolios to identify problem loans, assess the accuracy of loan ratings, and ensure compliance with SunTrust's underwriting policies. (Id. ¶¶ 3 & 4). At the time of the decisions at issue in this case, Charles Sears ("Sears") managed the Central Region Credit Review Department, which included three loan review officers in SunTrust's Nashville office; two in Knoxville; one or two in Chattanooga; and six in Atlanta, Georgia. While these loan review officers were assigned to a specific office and to work within a specific geographic area, they customarily worked together on projects throughout Tennessee and Georgia as needed, and they were all subject to the same policies and procedures. (Id. ¶¶ 5 & 6).

---

[1]Plaintiff objects to many of Defendant's "statements" in its Statement of Undisputed Facts on the grounds that the declarations to which Defendant cites in support of its factual averments do not comply with Rule 56 of the Federal Rules of Civil Procedure because the declarations are not affidavits. This objection is without merit. See 28 U.S.C. § 1746 (permitting the use of unsworn declarations made under penalty of perjury in all situations in which an affidavit is permitted under any rule or law of the United States).

2

Collins was born August 19, 1951 and graduated from the University of Tennessee with a degree in education. (Id. ¶¶ 10 & 11). Prior to going to work at SunTrust, Collins was a teacher for three years, managed a retail store for approximately two years, and worked at C&C Bank in Knoxville, Tennessee, for three or four years, first as a teller and then as manager of the collection department. After the collapse of C&C Bank, Collins worked at Metropolitan Savings & Loan Company in Nashville for approximately two years, in consumer and commercial loans and managing the credit card department. (Collins Depo. at 92-96).

Collins began her employment with Third National Bank, a predecessor entity to SunTrust, as a loan review administrator in 1984. By late 2003 (the time frame at issue in this case), Collins was a member of the Central Region Credit Review Department's Nashville office, where she held the position of loan review officer III. She was a "vice president," and held a "Grade 45" position in SunTrust's salary grade scale.[2] (Def. SOF ¶¶ 13-14).

In late 2003, there were only two other members of the Credit Review Department's Nashville office, Sallie Diehl ("Diehl") and Dennis Cheatham ("Cheatam"). Diehl, born in 1955, is four years younger than Ms. Collins. Diehl graduated from Vanderbilt University with a degree in business and began her career at SunTrust in 1985. Prior to being employed by SunTrust, Diehl had

_____

[2]Collins alleges she had management experience while employed at both Third National and SunTrust, and, on one occasion, supervised four employees. (Pf. Resp. Def. SOF ¶ 65).

3

worked for six years as a bank examiner with the Tennessee Department of Financial Institutions. Diehl was Collins' direct supervisor for some period of time up until February 2003. (Id. ¶¶ 16-19).

Cheatham, born in 1953, is two years younger than Collins. He graduated from the University of Tennessee with a degree in business and joined SunTrust in 1987. Prior to joining SunTrust, Cheatham worked for twelve years as a bank examiner with the FDIC and the Tennessee Department of Financial Institutions. In late 2003, both Cheatham and Diehl were "vice presidents," and held a "Grade 47" position in SunTrust's salary grade scale. (Id. ¶¶ 20-24).

During the four years prior to the elimination of Collins' position in late 2003, the size of the portfolios assigned to the Nashville office decreased significantly in terms of both total exposure and number of problem loans. Specifically, the size of the portfolios monitored by the Nashville office went from $3.7 billion on December 31, 1999, to $1.5 billion on November 30, 2003. The number of problem loans in these portfolios decreased from $106 million to $17 million during the same time frame. As a result of this decline in volume, the staff assigned to the Nashville office had decreased from five employees in 1999 to three employees on November 30, 2003. (Id. ¶¶ 33-35).

In February 2003, Sears realigned the duties of the three employees assigned to the Nashville office. As part of these changes, Sears took away Diehl's management responsibilities for

4

the Nashville office, so she was no longer Collins' supervisor, and assumed those duties himself. In addition, Sears consolidated responsibility for all Central Region loan portfolios arising out of SunTrust's Commercial and Industry Banking ("CIB") line of business with Diehl. As a result, any CIB loans previously assigned to Collins and Cheatham were transferred to Diehl's portfolio, and Diehl's non-CIB loan responsibilities were reassigned to Collins and Cheatham. (Id. ¶¶ 25-31). According to Collins, this reassignment resulted in assignments that were significantly less challenging and complex than the work she had been doing, and also substantially decreased the total value of the loan portfolio for which she was responsible. (Pf. Resp. Def. SOF ¶ 29).

In or around November 2003, Sears was instructed by his direct supervisor, Richard Crea, to review his organization to determine in what areas he could reduce expenses as part of a global expense reduction effort at SunTrust. After conducting this review, Sears determined that, as a result of the significant decline of loans and problem loans in the Nashville office as described above, there was excess capacity in the Nashville office of the Credit Review Department and that one of the three positions in that office could be eliminated. Sears examined the three employees in that office and concluded that Collins' position would be the one to be eliminated. (Def. SOF ¶¶ 36-38).

Sears did not consider cutting a position in Knoxville, Chattanooga, or Atlanta. In Sears' view, the need to eliminate a

5

position was a need specific to the city of Nashville, given the decrease in the loan portfolio and the number of criticized loans in Nashville. (Id. ¶¶ 39-40). Collins argues that her own loan portfolio was stable but has produced no documentary evidence to support that allegation.[3]

Sears testified that he based his decision to eliminate Collins' position on several factors. First, according to Sears, both Cheatham and Diehl had management experience at SunTrust while Collins did not. Collins argues that she actually did have management experience at SunTrust. Second, both Cheatham and Diehl had business degrees and prior valuable experience as bank examiners before coming to SunTrust. Collins had a degree in education and less impressive prior experience. Third, Sears performed an assessment of the three employees' relative strengths and skills and determined that Collins' were the weakest of the three. A fourth factor that carried some weight, but was not determinative, was the fact that the loan portfolios assigned to Cheatham and Diehl were more complex than those assigned to Collins. Finally, Cheatham and Diehl were ranked higher than Collin in terms of title and salary. (Id. ¶¶ 43-46).

Collins was notified during the week of December 9, 2003 that her job position had been selected for elimination effective on or

_____

[3]Although Collins testified in her deposition that she had the ability to "look up" information regarding the volume of loans reviewed in the Nashville office, she has not brought forth any evidence that contradicts the documentary evidence presented by SunTrust. (See Def.'s App., Ex. 10; Pf. Resp. Def. SOF ¶ 41).

6

about February 9, 2004.  After February 9, 2004, she was placed into a temporary position in the loan department, with no reduction in salary or benefits, through June 30, 2004.  After Collins' loan review position was eliminated, her job duties were reassigned exclusively within the Nashville office and primarily to Cheatham. No other employee came into the Nashville office to assume any of her responsibilities and none of her job responsibilities were reassigned outside the Nashville office.  In fact, after Diehl resigned in 2005, her position was not replaced either, so the Credit Review Office in Nashville now consists of one employee. (Id. ¶¶ 47-50).

Notwithstanding the down-sizing in the Nashville office, SunTrust posted openings for two new loan review employees in the Atlanta office in early 2004, just before the elimination of Collins' job became effective, and hired two new employees in the Atlanta office during the late spring and early summer of 2004.[4] The parties dispute whether Collins was informed about the openings - Sears testified in his deposition that he told Collins about these positions, but Collins claims that Sears only told her

---

[4]Sears' testimony in his deposition regarding the filling of these positions was somewhat equivocal.  Initially, he testified that the decision to hire these two new loan review officers was made in early 2004.  However, Sears testified that he told Collins about these openings at the time he notified her that her position was being eliminated, which occurred in December 2003.  Apparently they were actually posted in early 2004.

about an appraiser position in Atlanta (for which she was not qualified).[5]

When a reduction in force affects an employee, SunTrust's policy is to provide sixty days notice of such elimination, in order to permit that employee to search and apply for other available jobs at SunTrust via an internal Intranet website. SunTrust posts open positions on-line, and individuals interested in applying can do so. Although Maggie Mason ("Mason"), a SunTrust human resources employee, was made available to Collins in the event Collins had any questions about the job-posting process, it was Collins' responsibility to apply for any new postings for which she qualified and in which she had any interest. (Id. ¶¶ 51, 56-58).

SunTrust has a policy of granting "priority" to displaced employees applying for new positions which means that displaced employees can apply for as many open positions at a time as they want to, while ordinarily applicants are limited to two applications at a time. "Priority" also means that, as between two equally qualified candidates for a position, the displaced SunTrust employee will be given a preference for hiring. In any event, SunTrust does not guarantee re-employment to persons affected by a reduction in force, and the responsibility for searching and

_____

[5]Sears did not believe that Collins was qualified for the new loan positions in Atlanta in any event. Collins asserts she would have been as qualified for those positions as she was for her own. (Def. SOF 72 & 74 and Pf. Resp.).

8

applying for vacant positions rests entirely with the displaced employee. (Mason Depo. at 24-31).

While Collins was working in the temporary position in the loan department, she applied for two open positions within SunTrust. One of those is at issue in this lawsuit — a securities research associate position with SunTrust Robinson Humphrey, an investment banking subsidiary of SunTrust Banks, Inc.

Mark Hughes ("Hughes"), a securities research analyst in that organization, was the hiring manager responsible for filling the research associate position. The position was considered entry-level, and the job posting specified a preference for candidates who had two to three years of relevant experience in the securities industry and required that the person either have a Series 7 license at the time of hire or obtain one within sixty (60) days of employment.[6] Applicants who already had a Series 7 license or a strong background in economics, finance or accounting were generally preferred over those who did not. Collins had no such license. (Id. ¶¶ 79-82).

Hughes engaged Randall Shute ("Shute"), an independent contractor, to review and screen potential candidates for the position. After Collins applied for the position, she did not hear back from Shute. She then sought the assistance of Mason. Mason

---

[6]A Series 7 license is required for general securities representatives. In order to receive the license, an individual must pass an examination administered by the National Association of Securities Dealers ("NASD"). According to Hughes, individuals who lack a background in economics, finance or accounting might have difficulty passing the exam.

Case 3:04-cv-01031   Document 30   Filed 05/04/06   Page 9 of 30 PageID #: 526

contacted Shute to inquire about Collins' posting for the position. Afterwards, Shute telephoned Collins directly and informed her that she had not been selected to interview for the job because Hughes was looking for someone "just out of college."  (Id. ¶¶ 85-87).

Collins interpreted Shute's statement about being "just out of college" to mean that she was too old for the job.  In support she points to Shute's deposition testimony:

> So Mark Hughes was concerned about bringing on somebody with too much experience because this position only required two, two to three [years of experience].  And you may, in effect, have somebody that was, let's say my age, 43, reporting to a person 30 years old.  Because this person was an associate reporting to any analyst, and you are looking at really a pretty near entry level job.

(Shute Dep. at 28:15-22).

Apart from that testimony, Shute also testified that he himself had no input in the hiring decision, and that Hughes was solely responsible for making that decision.  Shute believed that Hughes chose not to interview Collins because she was overqualified for an entry-level or junior-level position.  However, Hughes and Shute never talked about the age of any candidates at all. (See Shute Dep. at 41:11-21; 43:19 - 44:2; Hughes Decl. ¶ 7.)

Ultimately, Hughes decided to hire Jack Sherck for the research associate position.  Sherck was 30 years old at the time he was hired and had three years of experience in the securities industry as a financial advisor and a research associate/junior securities analyst.  In addition, Sherck had already obtained his Series 7 license.  (Def. SOF ¶¶ 92-96).  Hughes decided to hire

Sherck because he was impressed by his qualifications and experience, his "stock market savvy" (Hughes Decl. ¶¶ 5, 6) and his initiative in contacting Hughes directly to inquire about the posting. While there is no dispute that Collins was technically qualified for the position, Hughes testified that he hired Jack Sherck because he felt he was the most qualified candidate for the job.

After Collins' termination from SunTrust, she filed the present Complaint. Collins claims that SunTrust engaged in age discrimination when it terminated her from her position as a loan review officer and when it failed to hire her as a research associate.

## II.  SUMMARY JUDGMENT STANDARDS

A party may obtain summary judgment if the evidence establishes there are not any genuine issues of material fact for trial and the moving party is entitled to judgment as a matter of law. _See_ Fed. R. Civ. P. 56(c); _Covington v. Knox County School Sys._, 205 F.3d 912, 914 (6th Cir. 2000). The moving party bears the initial burden of satisfying the court that the standards of Rule 56 have been met. _See_ _Martin v. Kelley_, 803 F.2d 236, 239 n.4 (6th Cir. 1986). The ultimate question to be addressed is whether there exists any genuine issue of material fact that is disputed. _See_ _Anderson v. Liberty Lobby_, 477 U.S. 242, 248 (1986); _Covington_, 205 F.3d at 914 (citing _Celotex Corp. v. Catrett_, 477 U.S. 317, 325 (1986)). If so, summary judgment is inappropriate.

11

To defeat a properly supported motion for summary judgment, the nonmoving party must set forth specific facts showing that there is a genuine issue of material fact for trial. If the party does not so respond, summary judgment will be entered if appropriate. Fed. R. Civ. P. 56(e). The nonmoving party's burden of providing specific facts demonstrating that there remains a genuine issue of material fact for trial is triggered once the moving party shows an absence of evidence to support the nonmoving party's case. Celotex, 477 U.S. at 325. A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. In ruling on a motion for summary judgment, the Court must construe the evidence in the light most favorable to the nonmoving party, drawing all justifiable inferences in its favor. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

### III. DISCUSSION AND ANALYSIS

As indicated, Collins' claims of age discrimination are brought under the ADEA and the THRA. Because the "stated purpose and intent of the [THRA] is to provide for execution within Tennessee of the policies embodied in the federal civil rights laws," Campbell v. Fla. Steel Corp., 919 S.W.2d 26, 31 (Tenn. 1996), the analysis of age discrimination claims under the THRA is the same as under the ADEA. See also Tenn. Code Ann. § 4-21-101(a) ("It is the purpose and intent of the general assembly by this chapter to . . . [p]rovide for execution within Tennessee of the policies embodied in the federal Civil Rights Acts of 1964, 1968,

12

and 1972 . . . and the Age Discrimination in Employment Act of 1967, as amended."). Accordingly, the analysis of Collins' ADEA claim applies to her THRA claim as well.

Under both the ADEA and the THRA, a plaintiff seeking to establish a claim of age discrimination must first prove a *prima facie* case of discrimination. Manzer v. Diamond Shamrock Chems. Co., 29 F.3d 1078, 1081–84 (6th Cir. 1994) (ADEA case applying McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) as later refined by Texas Dep't of Cmty Affairs v. Burdine, 450 U.S. 248 (1981)). An employee "may establish a *prima facie* case of discrimination either by presenting direct evidence of intentional discrimination by the defendant, or by showing the existence of facts which create an inference of discrimination." Talley v. Bravo Pitino Restaurant, Ltd., 61 F.3d 1241, 1248 (6th Cir. 1995) (internal citations omitted). Where no direct evidence of discrimination is available, the plaintiff may establish her *prima facie* case of age discrimination with indirect, circumstantial evidence by showing that (1) she was a member of a protected class; (2) she suffered an adverse employment action; (3) she was qualified for the particular position; and (4) she was replaced by or treated differently from similarly situated but significantly younger persons or, in a failure-to-hire case, the successful applicant was a substantially younger person. McDonnell Douglas, 411 U.S. at 902; Grosjean v. First Energy Corp., 349 F.3d 332, 340 (6th Cir. 2003); Godfredson v. Hess & Clark, Inc., 173 F.3d 365, 371 (6th Cir. 1999).

13

The fourth element, however, is modified when the adverse employment action was the result of a reduction in force, because the plaintiff is not actually replaced. "Instead, the plaintiff must present 'additional direct, circumstantial or statistical evidence tending to indicate that the employer singled out the plaintiff for discharge for impermissible reasons.'" Godfredson, 173 F.3d at 371 (quoting Scott v. Goodyear Tire & Rubber Co., 160 F.3d 1121, 1126 (6th Cir. 1998).

If the plaintiff establishes a *prima facie* case, then the burden shifts back to the defendant/employer to "articulate some legitimate, nondiscriminatory reason for the employee's rejection." Burdine, 450 U.S. at 253 (quoting McDonnell Douglas, 411 U.S. at 802). If the defendant carries that burden, then the plaintiff must prove that the proffered reasons are pretextual. Id., 450 U.S. at 253 (citing McDonnell Douglas, 411 U.S. at 804). In order to show that a proffered legitimate, non-discriminatory reason for an adverse employment action is pretextual, a plaintiff must show "either (1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate [her] discharge, or (3) that they were insufficient to motivate discharge." Manzer, 29 F.3d at 1084 (citation omitted).

A.  **Plaintiff's Discharge From the Credit Review Department**

Collins has met the first three elements of a *prima facie* case based upon circumstantial evidence: She was 52 years old at the time of the events giving rise to her complaint and therefore a member of a protected class for purposes of an age-discrimination

14

claim. See 29 U.S.C. § 631 (ADEA protects individuals age 40 and older); Tenn. Code Ann. § 4-21-101(b) (THRA protects individuals age 40 and older). She suffered an adverse employment action when her position was eliminated in February 2004, and SunTrust does not dispute the fact that she was well-qualified for the position she had held for nearly twenty years.

As for the fourth element of her *prima facie* claim, Collins appears to be attempting to raise a question of fact regarding whether her position was actually eliminated as part of a reduction in force, or whether she was in fact replaced by a younger person. As indicated above, while Sears made the decision to terminate Collins' position in the Nashville office in order to reduce expenses, he also decided around the same time to hire two new loan review officers in the Atlanta office. SunTrust argues that the loan review officers were not interchangeable, and that Collins' comparators in the Nashville office were both less than five years younger than she, conclusively demonstrating that age was not a factor in the decision to terminate her position. Conversely, although Collins does not indicate that she was willing to move to Atlanta nor that any of her former job responsibilities were transferred outside of the Nashville office, she avers that the various loan review officers in the different offices of the Central Region were virtually interchangeable and an expansion in the Atlanta office that was contemporaneous with the downsizing in the Nashville office demonstrates there was no real reduction in force.

15

The record before the Court establishes that there was, in fact, a true reduction in force. In Barnes v. GenCorp. Inc., 896 F.2d 1457 (6th Cir. 1990), the Sixth Circuit set forth what constitutes a "true work force reduction," writing:

> work force reduction situation occurs when business considerations cause an employer to eliminate one or more positions within the company. An employee is not eliminated as part of a work force reduction when he or she is replaced after his or her discharge. However, a person is not replaced when another employee is assigned to perform the plaintiff's duties in addition to other duties, or when the work is redistributed among other existing employees already performing related work. A person is replaced only when another employee is hired or reassigned to perform the plaintiff's duties.

Id. at 1465. In this case, the elimination of Collins' job has all the earmarks of a reduction in the workforce: business considerations caused the employer to eliminate one loan review officer position in Nashville and that position was never refilled. In fact, after Collins' position was eliminated, a further position was eliminated.

The fact that two loan review officers were hired in Atlanta subsequent to Collins' termination does not lead to the conclusion that no reduction in force took place. Under Barnes, "[a] person is replaced only when another employee is hired or reassigned to perform the plaintiff's duties." Id. There is no evidence to support a contention that the new hires in the Atlanta office assumed Collins' duties. Instead, the record shows SunTrust was desirous of reducing expenses and the Nashville office had suffered a significant decline in problem loans which required fewer loan review officers to oversee those loans. The record is "undisputed

16

that, as part of the overall reshuffling, [Plaintiff's] discharge resulted in the elimination of one employment position and accomplished cost savings for [the company], the goal of any RIF." Brocklehurst v. PPG Industries, Inc., 123 F.3d 890, 895 (6th Cir. 1997).

Hence, it cannot be said that the elimination of Collins' job was the result of anything other than a legitimate reduction in force. As such, Collins cannot establish the forth element of a *prima facie* case since the ADEA "does not create an affirmative duty to retain older workers whenever a reduction in staff becomes necessary . . . [n]or was the ADEA intended to protect older workers from the often harsh economic realities of common business decisions and corporate reorganizations.'" Stipkala v. American Red Cross, 2000 WL 712378 *4 (6th Cir. May 23, 2000)(per curiam), citing Allen v. Diebold, Inc., 33 F.3d 674 (6th Cir.1994); Wilson v. Firestone Tire & Rubber Co., 932 F.2d 510, 517 (6th Cir.1991)).

Even accepting Collins' argument that there was no reduction in force, however, she cannot show that she was replaced by someone significantly younger than she. Katherine Robinson was hired in April 2004, and Katherine Bass was hired in July 2004, both in the Atlanta office. Robinson, hired just two months after Collins' position was eliminated, is only one year younger than Collins. Bass, hired approximately four months later than Robinson, is only eight years younger.

The Sixth Circuit has held that, "in the absence of direct evidence that the employer considered age to be significant, an age

17

difference of six years or less between an employee and a replacement is not significant," while eight years can be, but is not necessarily, a significant age difference. Grosjean, 349 F.3d at 340. At the same time, the Grosjean court recognized that "[a]ge differences of ten or more years have generally been held to be sufficiently substantial" for purposes of meeting the fourth prong of a *prima facie* age discrimination case. Id. at 337 and 338 (cataloguing cases).

Under the circumstances of this case, the Court finds that the sole fact that Bass is eight years younger than Collins is not sufficient to create a disputed issue of fact as to whether Collins was replaced by a significantly younger person for purposes of establishing a *prima facie* case, given that Robinson, who was hired first, is only one year younger than Collins and that neither Robinson nor Bass actually took over any of Collins' job duties. Cf. Conley v. Yellow Freight Sys., Inc., No. 1:04-CV-060, 2005 WL 2757363, at *7 (E.D. Tenn. Oct. 25, 2005) (looking to Grosjean and holding that an age difference of seven years between plaintiff and a comparator was insignificant given the absence of any other evidence of age discrimination, and thus that plaintiff could not show he was treated less favorably than employees who were substantially younger than he for purposes of establishing a *prima facie* case); Pagett v. Eaton Corp., 2005 WL 2173635, at *3 n.2 (E.D. Mich. Sept. 2, 2005) (noting that the age difference between plaintiff and his comparator was "only eight years," and that such

18

difference was insufficient without other evidence to establish a *prima facie* case).

Alternatively, Collins argues that if she was discharged as a result of a reduction in force, she has met her burden of coming forward with "additional direct, circumstantial or statistical evidence" showing she was "singled out . . . for impermissible reasons." Godfredson, 173 F.3d at 371. In support of this claim, Collins argues that SunTrust's failure to consider her for the two Atlanta jobs gives rise to an inference of discrimination and that Charles Sears' failure to inform her about those job openings further supports such an inference.

While there is a disputed issue of fact as to whether Sears notified Collins about the Atlanta job openings (Sears claimed, rather equivocally, that he did tell Collins about those jobs and then later claimed she was not qualified for either position anyway), there is no evidence that Sears had a duty to tell her about those openings, regardless of whether SunTrust had a "policy" of giving priority to employees who had been subject to a reduction in force. See, e.g., Barnes v. GenCorp, Inc., 896 F.2d 1457, 1469–70 (6th Cir. 1990) ("This Circuit has clearly established that an employer has no duty under [the] ADEA to permit an employee to transfer to another position or to displace workers with less seniority when the employee's position is eliminated as part of a work force reduction."); Ridenour v. Lawson Co., 791 F.2d 52, 57 (6th Cir. 1986) ("Where an employer reduces his workforce for economic reasons, it incurs no duty to transfer an employee to

19

another position within the company."). Moreover, there is no dispute that Collins had the responsibility to search and apply for open positions, and she did not apply for the Atlanta positions. There is no evidence in the record that SunTrust failed to post those openings for the purpose of foiling Collins' ability to apply for them.

Collins also argues that the fact that Sears did not consider terminating any of the younger employees in the Tennessee offices in the Central Region gives rise to an inference that the decision to target her job for elimination was age-based. This argument is likewise unavailing for at least a couple of reasons. First, Sears, the decisionmaker, is actually older than Collins. <u>See</u>, <u>Jackson v. E.J. Brach Corp.</u>, 176 F.3d 971, 985 (7th Cir. 1999)(noting that plaintiff was "fighting an uphill battle" because the decisionmakers who terminated his position were older than plaintiff was at the time of termination); <u>Feldman v. Loomis</u>, 1999 WL 973518 at *3 (2d Cir. 1999)(invidious discrimination unlikely where, among other things, decision to terminate was made by someone older than plaintiff). Second, of the six loan review officers other than Collins in Tennessee, only the two in the Knoxville office are arguably significantly younger than Collins, one being seven years younger than she and the other nine years younger. Of the other four, two are older than Collins and two within five years of her age. This broadly ranging demographic does not suggest that the decision to consider only the Nashville office for a reduction in force was age-based.

20

The Court finds that Collins has failed either to show that she was replaced by a significantly younger person or to present "additional direct, circumstantial, or statistical evidence tending to indicate that [SunTrust] singled [her] out . . . for discharge for impermissible reasons." Godfredson, 173 F.3d at 371. Collins therefore has not established the necessary elements of a *prima facie* case of age discrimination based upon her discharge.

Even if Collins had established a *prima facie* case, however, SunTrust has articulated legitimate, non-discriminatory reasons for Collins' discharge, and Collins has not presented any evidence suggesting that these reasons are pretextual. According to SunTrust, Sears, in the exercise of his discretion, determined that there was excess capacity in the Nashville Loan Review Office, and that of the three employees in that office, Collins should be the one to go. Even if there had been excess capacity in another of the offices under his supervision and he might reasonably have decided in the alternative to down-size another office instead of the Nashville office, that would not suggest that his decision to decrease the number of employees in the Nashville office was pretextual or even unreasonable. Within the Nashville office, Sears compared Collins to Cheatham and Diehl, both of whom are very close in age to Collins and had been with SunTrust for a similarly lengthy period of time. In the exercise of his business judgment, Sears felt that Cheatham and Diehl were more valuable to the company than Collins for a variety of reasons. Neither this Court nor a jury can "examine an employer's reasons for discharge and

21

determine that the employer's business judgment or policies do not appeal to its sensibilities." Brocklehurst v. PPG Indus. Inc., 123 F.3d 890, 898 (6th Cir. 1997).

Collins argues that she has established pretext by showing that she was essentially set up for elimination back in February 2003, when a substantial portion of her job duties (including the most complex loans in her portfolio) was transferred to Diehl. There is no dispute, however, that Sears did not know in February 2003 that he would be called upon to reduce expenses in his Department.[7] Moreover, the size of Collins' loan portfolio in December 2003 was not the only factor considered by Sears in choosing to eliminate Collins' position, and Collins has not demonstrated that any of the other proffered reasons are factually false: Sears was directed to reduce expenses; the Nashville office was experiencing a sharp decline in the total value of the loan portfolio reviewed in that office; and both Cheatham and Diehl had

---

[7]Collins does not argue that the February 2003 realignment of duties within the Nashville office constituted an actionable adverse employment action. Nor could she, given that she could not show that she was treated less favorably than significantly younger but otherwise similarly situated employees — her only comparators for that purpose would have been Cheatham and Diehl, who, again, are not substantially younger.

22

valuable experience that Collins lacked,[8] were ranked higher, and were at a higher pay grade than Collins.

In sum, Collins' age-discrimination claim based upon her termination in February 2004 fails because she has not established a *prima facie* case of discrimination. Even if she had, she has not presented any evidence that SunTrust's asserted reasons for eliminating her position were pretextual. SunTrust is entitled to summary judgment in its favor as to this claim.

**B. SunTrust's Failure to Hire Plaintiff As a Research Associate**

The second adverse employment action about which Collins complains is SunTrust's refusal to hire her, or even interview her, for the position of securities research associate, an entry-level position for which she was admittedly qualified or even, in some respects, over-qualified.

### 1. Alleged "Direct" Evidence of Discrimination

As an initial matter, Collins claims that she has "direct" evidence of discrimination in regard to SunTrust's failure to consider her for the Research Associate position. The evidence Collins points to, however, is not "direct evidence" as that term has been defined in the Sixth Circuit.

The Sixth Circuit has explained that "direct evidence is that evidence which, if believed, *requires* the conclusion that unlawful

---

[8]The issue of whether Mr. Sears erroneously believed Ms. Collins did not have management experience within SunTrust is not material. Again, prior experience was just one factor considered by Mr. Sears, and it is undisputed that Mr. Cheatham and Ms. Diehl had management experience as well, in addition to their prior experience as bank examiners.

23

discrimination was at least a motivating factor in the employer's actions." Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp., 176 F.3d 921, 926 (6th Cir.1999) (emphasis added). Thus, "direct evidence of discrimination does not require a factfinder to draw any inferences in order to conclude that the challenged employment action was motivated at least in part by prejudice against members of the protected group." Johnson v. Kroger Co., 319 F.3d 858, 865 (6th Cir. 2003). For example, "a facially discriminatory employment policy or a corporate decision maker's express statement of a desire to remove employees in the protected group is direct evidence of discriminatory intent." Nguyen v. City of Cleveland, 229 F.3d 559, 563 (6th Cir. 2000).

The first piece of "direct" evidence offered by Collins is that she was told by Shute, the recruiter contracting for SunTrust, that she was not considered seriously for the position because "SunTrust was looking for someone 'just out of college.'" (Doc. No. 26, at 10.) As SunTrust points out, however, a decision based upon a candidate's status (or lack thereof) as a recent college graduate is not necessarily ageist.

The Supreme Court has observed that "an employee's age is analytically distinct from his years of service," Hazen Paper Co. v. Biggins, 507 U.S. 604, 611 (1993). Appellate courts confronted with the same question have held that the fact that an employer is looking for a "recent college graduate" is not direct evidence of discrimination. See, e.g., Grossman v. Dillard Dept. Stores, 109 F.3d 457, 459 (8th Cir. 1997) ("That Dillards recruits recent

24

college graduates is not evidence it discriminates against older workers."); Williams v. Gen. Motors Corp., 656 F.2d 120, 130 n.17 (5th Cir. 1981) ("[T]he bare fact that an employer encourages employment of recent college and technical school graduates does not constitute unlawful discrimination."); Sterry v. Safe Auto Ins. Co., 2003 WL 23412974, at *14 (S.D. Ohio Aug. 25, 2003) (observing that "recent college graduates" can be any age, and rejecting the contention that a "recent college graduate requirement is a proxy for age discrimination").

The deposition testimony of Shute and Hughes demonstrates that Hughes was concerned about hiring someone with too much experience or seniority into an entry-level position, and the job description specifically stated that the preferred candidate would have two to three years of experience in the relevant area. There is no direct evidence that Hughes or Shute correlated "two-to-three years of experience" with a preference for candidates aged 25 to 30 (or any other age range). Under the facts of this case, the statement that Hughes was looking for someone "just out of college" does not constitute direct evidence of age discrimination.

Second, Collins relies upon Shute's testimony that "Hughes was concerned that if [an] older person was reporting to a younger person that this would cause tension in the work place" as "direct" evidence of age discrimination. (Doc. No. 26, at 10 (citing Shute Dep. at 42–43).) However, Shute made it clear that his statements regarding Hughes' alleged concern was based solely upon his own

25

inference rather than on a sentiment or directive expressly articulated by Hughes:

> Q. And let me just one other question here, hopefully we will end this. You said it would be difficult for a person or any older person, presumably, to report to a younger person, that they might be–
> A. Potentially. He was concerned about that. That is based on feedback that we have gotten. Again, you have to remember it is an associate position, so that is really a junior position, lowest in the –
> Q. I understand.
> A. – CIB organization.
> Q. But Hughes was concerned if an older person was reporting to a younger person, that could cause some tension or that sort of thing in the workplace?
> A. Or cause them to leave. And –
> Q. Cause the older person to leave?
> A. Right. I mean that is always a concern for any hired manager.

(42:18-43:12.)

> Q. What specifically did Hughes tell you with regard to any concerns he had about an older person reporting to a younger person?
> A. None.
> Q. What –
> A. We don't talk about age by –
> Q. So that is something you inferred from his comments but not something he said?
> A. Yes sir.

(Shute Dep. 43:10-25, 44:1-2.) The context in which Shute made his comments clearly shows they were his own extrapolations, and he confirmed that the only thing Hughes actually said to him was that he was looking for someone "just out of college" or with "two to three years experience." (Shute Dep. at 26:3-13, 44:18-22.) It is undisputed that Shute forwarded Collins' resume to Hughes and that Hughes, not Shute, made the decision of whom to interview and whom to hire. Both Shute and Hughes testified that they never discussed the age of any of the candidates. There is no evidence that

26

Hughes ever expressed any concern about hiring an older person as opposed to a younger person, though he was clearly concerned about hiring someone with too much experience in an entry-level position.

The fact that Collins herself interpreted Shute's statement that Hughes was looking for someone just out of college to mean she was "too old for a new job" is simply not direct evidence of discrimination because Hughes did not say that and what he did say about the candidate just being out of college requires an inference to make it an ageist statement.

Because Collins has failed to come forward with direct evidence, the Court turns to the <u>McDonnell Douglas</u> burden-shifting framework.

### 2. *Alleged Indirect Evidence of Discrimination*

Collins has carried her initial burden of establishing a *prima facie* case of discrimination with respect to SunTrust's failure to hire her in the position of research associate: (1) at age 52 she was subject to the protections of the ADEA and the THRA; (2) she suffered an adverse employment action when she was not hired for the position she sought; (3) SunTrust concedes she was qualified for the position at issue; and (4) Sherck, the person who was hired instead of Collins, was thirty years old and therefore significantly younger.

SunTrust argues that Collins was not hired for the job of securities research associate because she was not the most qualified candidate and her job experience and background did not match the qualifications and experience-level set forth in the job

description. The evidence presented, which Collins does not effectively counter, supports SunTrust's argument.

The position of research associate is an entry-level position, and the job posting specified a preference for candidates who had two to three years of relevant experience in the securities industry and either a Series 7 license or the ability to obtain that license within sixty (60) days of employment. Because of the nature of the exam, individuals who lack a background in economics, finance or accounting might have difficulty passing the Exam within 60 days of employment. Consequently, applicants already possessing a Series 7 license or a strong background in economics, finance or accounting were generally preferred over those who did not.

The decisionmaker, Hughes, testified in his deposition that while he was searching for a research analyst, he was contacted by Sherck. Hughes was impressed by Sherck's knowledge of the education sector, which was Hughes' specific area of securities analysis, and by the initiative Sherck demonstrated by calling Hughes directly. Sherck had three years of previous experience in the securities industry as a financial advisor and a research associate/junior securities analyst and already possessed a Series 7 license. Hughes stated he decided to hire Sherck because he was impressed by his qualifications and experience, his "stock market savvy," and his initiative.

Hughes further testified that he made a decision regarding which candidates to interview for the position based upon their

28

resumes.  In his view, based upon Collins' resume, her background did not "reflect any interest or experience in the stock market, nor did it suggest a track record of personal initiative or creative thinking.  Her background did not appear to involve financial statement analysis or financial modeling.  She also did not appear to have any specific experience in the areas of education or publishing.  In short, there was nothing about Collins' resume that would have made [Hughes] believe a personal interview would be an appropriate next step." (Hughes Dec. ¶ 8.)

Collins offers no evidence whatsoever to rebut SunTrust's proffered reasons for hiring Sherck instead of her.  There is no evidence that the proffered reasons are factually false, that they were insufficient to cause Hughes to select Sherck over Collins, or that they were not even the real reasons why Hughes hired Sherck and chose not even to interview Collins.[9] Hence, Collins has not carried her burden of rebutting SunTrust's legitimate non-discriminatory reasons for not offering her the position of research associate.

Whether analyzed as a direct or indirect case, Collins cannot show that SunTrust discriminated against her in relation to the

_____

[9]Collins argues SunTrust violated its policy of giving priority to displaced employees by failing to consider her seriously for the position.  However, the evidence shows that the "priority" policy simply meant that, if two candidates were basically equal in qualifications, there was a preference for hiring the displaced SunTrust employee.  In this case, Collins has not demonstrated that she was anywhere near as qualified for the position as  Sherck, so the priority policy would not apply.

research associate position. Accordingly, SunTrust is entitled to summary judgment on Collins' failure-to-hire claim.

### IV. <u>CONCLUSION</u>

For the foregoing reasons, SunTrust's Motion for Summary Judgment will be granted and Collins claims of age discrimination will be dismissed.

An appropriate Order will be entered.

_Robert L. Echols_
ROBERT L. ECHOLS
UNITED STATES DISTRICT JUDGE

Case 3:04-cv-01031   Document 30   Filed 05/04/06   Page 30 of 30 PageID #: 547